NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200508-U

NO. 4-20-0508

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 20, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| HECTOR U. ROSAS, | ) | No. 13CF1962 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jason Matthew Bohm, |
| | ) | Judge Presiding. |

---

JUSTICE HOLDER WHITE delivered the judgment of the court.
Presiding Justice Knecht and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, concluding the trial court did not err by sentencing defendant to a maximum term of 30 years' imprisonment for predatory criminal sexual assault of a child.

¶ 2    In October 2014, defendant, Hector U. Rosas, pleaded guilty to predatory criminal sexual assault of a child, a Class X felony (720 ILCS 5/12-14.1(a)(1) (West 2012)).  In September 2020, defendant filed a second amended motion to withdraw his guilty plea and vacate the judgment or, in the alternative, to reconsider the sentence.  The following month, the trial court denied the motion to withdraw the guilty plea and the motion to reconsider the sentence.

¶ 3    Defendant appeals, arguing his maximum 30-year sentence should be vacated and the case remanded for a new sentencing hearing where the trial court failed to afford sufficient

weight to the evidence in mitigation and improperly considered evidence in mitigation as evidence in aggravation. For the following reasons, we affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5            In October 2014, defendant pleaded guilty to predatory criminal sexual assault of a child, a Class X felony (720 ILCS 5/12-14.1(a)(1) (West 2012)). In December 2014, the trial court held a sentencing hearing. The presentence investigation report (PSI) indicated defendant was 51 years old at the time of sentencing. Defendant's criminal history included multiple traffic citations. According to the PSI, defendant was born in Peru and was a lawful permanent resident. Defendant had two children who resided with their mother in Peru, and defendant sent a minimum of $350 per month to assist in their support and upbringing.

¶ 6            Q.T.L., 17 years old at the time of defendant's sentencing, testified defendant was dating her mother when Q.T.L. moved to the United States. When Q.T.L. was approximately seven years old, the abuse began one morning when she awoke to someone touching her vagina. Q.T.L. tried moving like she was waking up to get defendant to stop touching her, but he did not stop. Q.T.L. identified defendant as the person who touched her. According to Q.T.L., defendant touched her more than once per week while her mother was at work. Q.T.L. testified the abuse went on for approximately three years. Q.T.L. never told her mother about the abuse because she worried the news would cause her mother to fall into a diabetic coma. Defendant reminded Q.T.L. that any bad news combined with her mother's diabetes could cause her mother to die.

¶ 7            Andrew Davis, a police officer with the City of Champaign, testified that, during his investigation of defendant, he made contact with two children, N.N. and A.H. According to Davis, N.N. made an initial statement about abuse at school, which was reported to the student

resource officer. When Davis interviewed N.N., Davis identified defendant as a potential offender because he was dating N.N.'s god-grandmother. The State played a recording of Davis's interview with N.N. N.N. described an incident that occurred when she was 9 or 10 years old where defendant got on top of her from behind and asked if it felt good. N.N. described a second incident where defendant got into bed with her and hugged her. N.N. identified defendant from a photograph array.

¶ 8            Based on N.N.'s interview, Davis contacted N.N.'s younger cousin, A.H. The State played the recording of Davis's interview with A.H. A.H. told Davis that defendant laid on her as many as five times. She explained that she would play on a laptop while lying with her belly on the bed. Defendant would lie on A.H. as she played on the laptop, move around, and make A.H. uncomfortable.

¶ 9            Defendant's sister testified he was a hard worker who provided for his family. Defendant's mother testified he liked to help others and she relied on his help. Defendant also offered various letters of support.

¶ 10           The State recommended a maximum term of 30 years' imprisonment. The State highlighted the nature and duration of the offenses against Q.T.L. The State noted that although defendant appeared to be an amiable and decent person, that appearance made defendant dangerous because "below the surface there is a human being there that only comes out when he has victims." The State argued defendant showed a repeated pattern of abuse over many years with multiple victims. The State characterized defendant as having a complete lack of rehabilitative potential, arguing there was no reason to think defendant would reform his conduct given the history.

¶ 11    Defense counsel argued the trial court should give no weight to the allegations from N.N. and A.H. because the police conducted a sloppy investigation.  Counsel argued defendant had rehabilitative potential because he took responsibility for his conduct and the evidence in mitigation demonstrated defendant was a loving man dedicated to working and providing for his daughters.  Defense counsel noted defendant's criminal history consisted of traffic citations, which defendant always paid.  Finally, defense counsel argued the cost to the taxpayers to incarcerate defendant for 30 years was excessive when defendant would be deported after serving his sentence.  Defense counsel requested a sentence in the lower range.

¶ 12    The trial court stated it considered the PSI, the evidence presented in aggravation and mitigation, and the comments made by the State and defendant.  The court found the only statutory aggravating factor was deterrence.  The court stated,

> "Now, there is other mitigation in this record, substantial mitigation.  The defendant is 51 years of age.  He has no prior criminal history.  He pled guilty.  He has been able to obtain and maintain employment and not just a job but more than one job.  From the letters presented on his behalf he is a good worker.  He shows up on time.  He does his job and he supports the family he has back in Peru.  These are all non-statutory mitigating factors.  And, again, the only statutory factor in aggravation is the deterrent factor.
>
> The individuals who have written on his behalf and testified on his behalf talk about what a good man he is, he's a good worker, he's a good son, he's a good brother, and that's well

- 4 -

taken by the court, except child molesters don't wear badges, they don't carry signs. They blend into the community. That's the way they are able to get away with what they do."

The court noted Q.T.L.'s testimony about the extent of damage caused by defendant and the fact she would forever remember what defendant did to her. The court noted the measures he took such as showing up for work on time, supporting his family, and being a good citizen, allowed him to prey on children, sometimes for many years.

¶ 13 The trial court stated it considered the evidence that defendant had attached himself to another family with young girls after Q.T.L.'s mother ended the relationship. The court stated defendant was unable to carry the abuse as far with N.N. and A.H., but it concluded the deterrence factor outweighed the mitigation in the case. The court further considered defense counsel's argument that defendant would be deported after completing his sentence. The court stated, "And the question is does the court impose a minimal sentence which is somewhere of a mandatory minimum of six, and then allow the defendant to be relocated back to his home in Peru and live out his life there, or does the court impose closer to a maximum sentence which will guarantee, quite frankly, that this defendant will not pose a danger to any other children." The court concluded, "The deterrent factor has to come across loudly and clearly, and it will be one of 30 years in the Illinois Department of Corrections."

¶ 14 In September 2020, on remand from a prior appeal, defendant was allowed to file a second amended motion to withdraw his guilty plea and vacate the judgment or, in the alternative, to reconsider the sentence. See *People v. Rosas*, 2020 IL App (4th) 190090-U, ¶ 23. The motion to reconsider sentence alleged the sentence failed to comply with the Illinois

Constitution, the sentence was excessive, and the trial court failed to adequately consider defendant's potential for rehabilitation and lack of criminal history as mitigating factors.

¶ 15    Following a hearing on the motion to withdraw the guilty plea, the trial court denied the motion.  Defense counsel stood on the motion to reconsider the sentence.  The State noted the sentencing judge had the benefit of listening to the victim and observed her demeanor before it imposed the 30-year sentence.  The trial court concluded there was no error in defendant's sentence.

¶ 16    This appeal followed.

¶ 17                    II. ANALYSIS

¶ 18    On appeal, defendant argues his maximum 30-year sentence should be vacated and the case remanded for a new sentencing hearing where the trial court failed to afford sufficient weight to the evidence in mitigation and improperly considered evidence in mitigation as evidence in aggravation.

¶ 19    A trial court's sentencing decisions are given substantial deference.  *People v. Snyder*, 2011 IL 111382, ¶ 36, 959 N.E.2d 656.  We will disturb a sentence within the statutory limits for the offense only if the trial court abused its discretion.  *People v. Flores*, 404 Ill. App. 3d 155, 157, 935 N.E.2d 1151, 1154 (2010).  A court abuses its discretion when imposing a sentence "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense."  *People v. Stacey*, 193 Ill. 2d 203, 210, 737 N.E.2d 626, 629 (2000).

¶ 20    In determining an appropriate sentence, the trial court may consider the seriousness, nature, and circumstances of the offense, including the nature and extent of the elements of the offense.  *People v. Saldivar*, 113 Ill. 2d 256, 271-72, 497 N.E.2d 1138, 1145

(1986).  The court is not required to explicitly outline the factors considered for sentencing, and we presume the court considered all mitigating factors absent explicit evidence to the contrary. *People v. Meeks*, 81 Ill. 2d 524, 534, 411 N.E.2d 9, 14 (1980).  Each sentencing decision must be based on a consideration of factors including "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Fern*, 189 Ill. 2d 48, 53, 723 N.E.2d 207, 209 (1999).  The trial court is better able to weigh these factors, having observed the defendant and proceedings. *Id.*  We will not substitute our judgment for that of the trial court merely because we would have balanced the factors differently. *Id.*

¶ 21         Here, the trial court stated it considered the PSI, the evidence presented in aggravation and mitigation, and the comments made by the State and defendant.  The court found the only statutory aggravating factor was deterrence.  The court stated,

> "Now, there is other mitigation in this record, substantial mitigation.  The defendant is 51 years of age.  He has no prior criminal history.  He pled guilty.  He has been able to obtain and maintain employment and not just a job but more than one job.  From the letters presented on his behalf he is a good worker.  He shows up on time.  He does his job and he supports the family he has back in Peru.  These are all non-statutory mitigating factors.  And, again, the only statutory factor in aggravation is the deterrent factor.
>
> The individuals who have written on his behalf and testified on his behalf talk about what a good man he is, he's a good worker, he's a good son, he's a good brother, and that's well

taken by the court, except child molesters don't wear badges, they
don't carry signs. They blend into the community. That's the way
they are able to get away with what they do."

The court noted Q.T.L.'s testimony about the extent of damage caused by defendant and the fact she would forever remember what defendant did to her. The court noted the measures he took, such as showing up for work on time, supporting his family, and being a good citizen, allowed him to prey on children, sometimes for many years.

¶ 22    The trial court stated it considered the evidence that defendant had attached himself to another family with young girls after Q.T.L.'s mother ended the relationship. The court stated defendant was unable to carry the abuse as far with N.N. and A.H., but it concluded the deterrence factor outweighed the mitigation in the case. The court concluded, "The deterrent factor has to come across loudly and clearly, and it will be one of 30 years in the Illinois Department of Corrections."

¶ 23    The trial court clearly addressed the factors in mitigation and determined the deterrence factor in aggravation outweighed the mitigating evidence. Defendant's criminal conduct was limited to the offense to which he pleaded guilty, and the trial court properly took that into account in determining defendant's sentence. Defendant contends the court gave inadequate weight to the mitigating factors, but the weight to be given to the various factors is within the discretion of the trial court. Additionally, the court noted the seriousness of the offense and the lifelong impact it had on the victim. See *People v. Charles*, 2018 IL App (1st) 153625, ¶ 47, 138 N.E.3d 785 ("The most important sentencing factor is the seriousness of the offense, and the court need not give greater weight to rehabilitation or mitigating factors than to

the severity of the offense.").  Under these circumstances, we cannot say the court abused its discretion in determining deterrence outweighed the mitigating evidence.

¶ 24    Defendant relies on *People v. Smith*, 178 Ill. App. 3d 976, 985, 533 N.E.2d 1169, 1175 (1989), and *People v. Gibbs*, 49 Ill. App. 3d 644, 648, 364 N.E.2d 491, 494 (1977), in support of his argument that the trial court failed to afford adequate weight to the mitigation evidence in this case.  The State correctly points out the Illinois Supreme Court has rejected a comparative analysis approach to sentencing.  *Fern*, 189 Ill. 2d at 55.  Moreover, we find *Smith* and *Gibbs* distinguishable.

¶ 25    In *Smith*, "the defendant was 17 years of age, had no prior criminal record and was mentally retarded.  Also, his character and attitude indicated that he was unlikely to commit another crime."  *Smith*, 178 Ill. App. 3d at 985.  Here, defendant was 51 years of age, and although he lacked a prior criminal history, he did in fact commit further offenses.  In *Gibbs*, the defendant was sentenced to an indeterminate term of 50 to 100 years in prison.  *Gibbs*, 49 Ill. App. 3d at 648.  The appellate court determined the trial court failed to consider the defendant's rehabilitative potential and reduced the sentence to 15 to 45 years in prison.  *Id.* at 649.  In this case, defendant was not subject to an indeterminate sentence.  Moreover, the sentence in *Gibbs* far exceeded the sentence in this case.  Accordingly, we do not find *Gibbs* persuasive in this instance.

¶ 26    Defendant also asserts the trial court improperly considered the mitigation evidence in aggravation.  The State contends defendant failed to raise a contemporaneous objection and preserve the issue in his postsentencing motion.  See *People v. Hillier*, 237 Ill. 2d 539, 544, 931 N.E.2d 1184, 1187 (2010).  Defendant argues defense counsel raised essentially the same issue before the trial court by arguing the sentence imposed was inconsistent with

defendant's family situation, past history of criminality, mental history, economic status, education, and occupational or personal habits. Defendant further asserts that if this court finds the issue forfeited, this court should consider the claim under the plain error doctrine.

¶ 27       We need not resolve this dispute, however, because we conclude the trial court did not improperly consider the mitigation evidence in aggravation. Here, the trial court did comment that defendant's good reputation allowed him access to his victims. However, it does not follow that the court considered his reputation in aggravation. The court very clearly addressed defendant's work history, his support of his family, and his lack of criminal history as factors in mitigation. However, the court went on to explain it did not find the factors to be particularly mitigating in this case because defendant used his reputation and appearance to ingratiate himself with women who had young girls. Rather than considering mitigating factors in aggravation, the court explained defendant's method of operation based on the evidence presented at the sentencing hearing. The court concluded, "The deterrent factor has to come across loudly and clearly, and it will be one of 30 years in the Illinois Department of Corrections." See *Charles*, 2018 IL App (1st) 153625, ¶ 47 (stating the trial court determines the weight to be given to mitigating evidence).

¶ 28       For the foregoing reasons, we conclude the trial court did not abuse its discretion in giving greater weight to the aggravating factor than it did to the mitigating factors. The court also did not improperly rely on the mitigating evidence in aggravation. We therefore conclude the court did not abuse its discretion in sentencing defendant to the maximum term of 30 years' imprisonment for predatory criminal sexual assault of a child.

¶ 29                                III. CONCLUSION

¶ 30       For the reasons stated, we affirm the trial court's judgment.

¶ 31        Affirmed.