NOTICE
Decision filed 02/13/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 240286-U

NO. 5-24-0286

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-CF-2195 |
| | ) | |
| AARON MICHAEL DELONG, | ) | Honorable |
| | ) | Timothy D. Berkley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT[*] delivered the judgment of the court.
Justices Vaughan[**] and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's *sua sponte* denial of the defendant's *pro se* motion for leave to file a successive postconviction petition is affirmed where the defendant could not challenge his postplea counsel's ineffectiveness after voluntarily withdrawing his direct appeal, and the trial court properly reconsidered its order advancing the defendant's successive petition to the second stage of the postconviction proceedings.

¶ 2   In 2015, the defendant, Aaron Michael DeLong, pled guilty to one count of predatory criminal sexual assault and was sentenced to 30 years in prison. Three days after sentencing, the defendant filed a *pro se* motion to withdraw his guilty plea. Thereafter, new counsel was appointed to represent the defendant, and appointed counsel filed an amended motion to withdraw the

_____

[*]Justice Welch was originally assigned to the panel. After the death of Justice Welch, Justice Hackett was substituted on the panel and has read the briefs and listened to oral argument.
[**]Justice Moore was originally assigned to the panel prior to his retirement. Justice Vaughan was substituted on the panel and has read the briefs and listened to oral argument.

1

defendant's guilty plea as well as a postconviction petition filed pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). The circuit court of Madison County denied the motion to withdraw the guilty plea and the postconviction petition. The defendant appealed but later voluntarily dismissed his appeal.

¶ 3       Thereafter, in November 2021, the defendant filed a *pro se* motion for leave to file a successive postconviction petition. Subsequently, the trial court, without making any explicit finding on cause and prejudice, advanced the petition to the second stage of the postconviction proceedings and appointed postconviction counsel to represent the defendant. However, the matter was then transferred to a different judge, and that judge determined that the defendant's *pro se* petition had been improperly advanced to the second stage of the postconviction proceedings because the requisite finding on cause and prejudice had not yet been made. Consequently, the judge denied the defendant's motion for leave to file a successive postconviction petition, finding that the defendant had not satisfied the cause and prejudice test required for the filing of a successive postconviction petition.

¶ 4       On appeal, the defendant argues that his postplea counsel was ineffective for filing a postconviction petition during the postplea proceedings when the same claims could have been pursued solely in the postplea motion, and the trial court improperly denied the defendant's successive postconviction petition without giving notice to the parties that it would make a finding on cause and prejudice after the petition had already advanced to second-stage postconviction proceedings. For the reasons that follow, we affirm.

¶ 5                                          I. BACKGROUND

¶ 6       On October 16, 2014, the State charged the defendant with three counts of predatory criminal sexual assault (720 ILCS 5/11-1.40(a)(1) (West 2012)) and one count of possession of

child pornography (*id.* § 11-20.1(a)(1)(vii)) for incidents that involved H.D., the defendant's 12-year-old stepdaughter. On October 5, 2015, the defendant entered an open guilty plea to one count of predatory criminal sexual assault. In exchange, the State agreed to dismiss the remaining charges. At the guilty plea hearing, the trial court admonished the defendant about the nature of the plea, the charge to which he was pleading guilty, the applicable sentencing ranges for each charge, and the rights that he was giving up by pleading guilty. The trial court also questioned the defendant to determine whether the guilty plea was knowingly and voluntarily made. After the State read the factual basis, the trial court accepted the defendant's guilty plea, finding that it was knowingly and voluntarily made.

¶ 7 On February 2, 2016, the trial court held the sentencing hearing, at which the State presented testimony from David Vucich, a lieutenant in the investigation division of the Madison County Sheriff's Office, as evidence in aggravation. Lieutenant Vucich testified that H.D.'s mother had reported that she discovered a video on the defendant's phone showing H.D. in the shower. H.D.'s mother was married to the defendant at the time. During the police interview with the defendant, the defendant eventually admitted that he had recorded H.D. while she was in the shower and that he had also engaged in sexual acts with her.

¶ 8 The defendant did not present any evidence in mitigation. During arguments, the State asked for the defendant to be sentenced to the maximum sentence of 30 years in prison. The State noted that the letters included with the presentence investigation (PSI) report revealed how devastating the case had been for H.D. and her family and how H.D. had changed from a happy, bright, and bubbly child to a child who was struggling and had to be admitted into a mental health facility for suicidal thoughts. Thus, the State argued that the defendant's conduct caused serious

3

harm. In response, the defendant's plea counsel[1] argued, in mitigation, that the criminal conduct was unlikely to reoccur, as the defendant would be in prison for a substantial amount of years, he would never be allowed around children again, and he would be a registered sex offender and on mandatory supervised release (MSR) for the rest of his life. The defendant's plea counsel also noted that the defendant accepted responsibility for his actions and pled guilty, so that H.D. would not have to testify. Thus, the defendant's plea counsel argued that the defendant should not be sentenced to the maximum sentence. The defendant did not make a statement in allocution.

¶ 9       Following arguments of counsel, the trial court stated that it had considered the arguments of counsel and the PSI report, which included the various letters that were submitted showing the impact that the defendant's actions had on H.D., as well as on her entire family. The trial court then sentenced the defendant to 30 years in prison to be followed by a 3 year to natural life MSR term. After announcing the sentence, the trial court admonished the defendant in accordance with Illinois Supreme Court Rule 604(d) (eff. Dec. 3, 2015).

¶ 10      On February 5, 2016, the defendant filed a *pro se* motion to withdraw his guilty plea based on allegations that his plea counsel was ineffective and that his 30-year sentence was excessive. Specifically, the defendant alleged that the State had initially offered him a sentence of 18 years but that his plea counsel advised him that he should decline the offer. The defendant contended that his plea counsel also told him that if he pled guilty, he would not have a sentencing cap, but counsel promised a sentence of between 8 to 12 years. The defendant also contended that his brother contacted plea counsel to inform counsel that the defendant wished to accept the offer, but counsel never responded to the call. In addition, the defendant alleged that from October through

---

[1]The defendant's first appointed counsel withdrew before the defendant pled guilty. He was then appointed new counsel for the plea and sentencing proceedings. For ease of reference, we will refer to the defendant's first appointed counsel as initial counsel and his plea and sentencing counsel as plea counsel.

4

late November 2015, he did not have any contact with his plea counsel. At the end of November, counsel finally visited him, and during this meeting, counsel showed him seven letters that were going to be submitted against him at sentencing in aggravation. However, counsel only allowed him to submit three letters in mitigation.

¶ 11    The defendant also alleged that prior to the sentencing hearing, plea counsel told the defendant that counsel would ask for a 10-year sentence, but at the sentencing hearing, counsel only asked for a sentence of less than 30 years. The defendant further alleged that during Lieutenant Vucich's testimony, counsel only asked Lieutenant Vucich two questions. In addition, the defendant argued that his sentence was "extremely inappropriate" where other defendants with similar to identical convictions received sentences of 10 to 12 years in their cases, and where his plea counsel had promised that he would be sentenced to 8 to 12 years. He argued that his attorney did not have his best interests in mind throughout the plea proceedings and asked for his guilty plea to be withdrawn, so that he could seek "more competent counsel."

¶ 12    On October 7, 2016, the trial court appointed new counsel to represent the defendant on the defendant's motion to withdraw guilty plea.[2] On October 3, 2017, the defendant's postplea counsel filed certificates pursuant to Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) and Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). On November 14, 2017, the defendant's postplea counsel filed a renewed and amended motion to withdraw guilty plea and an amended postconviction petition[3] filed pursuant to the Act (725 ILCS 5/122-1 *et seq.* (West 2016)). The amended motion to withdraw guilty plea alleged, in part, that the defendant continued to assert that he did not knowingly and voluntarily enter into a guilty plea in that he had agreed to an open

_____

[2]For ease of reference, we will refer to this counsel as postplea counsel.
[3]Although counsel titled this petition as an amended postconviction petition, this was the first postconviction petition filed on the defendant's behalf.

5

plea of guilty because his plea counsel told him that he would not receive a sentence of more than 18 years. The amended motion asserted that the State had made an initial offer of 18 years in prison, but the defendant's plea counsel had advised the defendant to reject the State's offer because counsel believed that an agreement could be negotiated with a range of between 8 to 12 years in prison. The amended motion asserted that had the defendant known that he could receive a sentence in excess of 18 years, he would have rejected plea counsel's advice and accepted the State's purported offer of 18 years.

¶ 13 The amended postconviction petition incorporated the allegations raised in the amended motion to withdraw guilty plea. In addition, the amended postconviction petition asserted that the defendant's plea counsel was ineffective in that (1) the defendant's contact with counsel was minimal in light of the severity of the charges and the potential sentence, (2) counsel advised the defendant to reject an 18-year sentence plea deal in favor of an open plea, (3) counsel advised the defendant that an agreement could be negotiated where the defendant would serve a sentence of between 8 to 12 years, (4) counsel failed to thoroughly and accurately inform him of the applicable sentencing ranges for his charges, (5) counsel advised him that he could receive a substantially lesser sentence than his 30-year sentence, (6) counsel's performance at the sentencing hearing was deficient in light of counsel's limited cross-examination of the State's witness and the minimal amount of mitigating factors that were presented on the defendant's behalf, and (7) counsel failed to have witnesses testify on the defendant's behalf at the sentencing hearing. The amended postconviction petition asserted that the defendant was prejudiced by his plea counsel's ineffectiveness in that there was a reasonable probability that he would have accepted the State's offer for an 18-year sentence. The amended postconviction petition also alleged that the defendant's 30-year sentence was excessive.

6

¶ 14    On February 14, 2018, the State filed a response to the defendant's amended motions, in which the State indicated that at the guilty plea hearing, the defendant was fully admonished about the consequences of pleading guilty, about how there was no agreement as to his sentence, and about the 6-to-30-year sentencing range for a Class X felony. The State explained that the defendant pled guilty to one count of predatory criminal sexual assault of a child, which had an applicable sentencing range of 6 to 60 years in prison. However, the agreement was that the defendant would be sentenced under the traditional range of sentencing for a Class X felony. Thus, the State noted that although there were not any statements made about any caps on the sentence range, the defendant did receive a cap of 30 years. The State also explained that during the proceedings, there were ongoing negotiations between the State and the defendant's plea counsel. The State indicated that the defendant's counsel advocated for the defendant and argued for a lesser sentence or a cap on the sentence. However, the State would not have agreed to a sentence term of 8 to 12 years in prison, as there was ample evidence to convict the defendant, which included witness statements and forensic evidence. Also, the victim's family was in constant contact with the State and was willing to proceed to trial if the defendant did not accept an open plea to one count of predatory criminal sexual assault of a child.

¶ 15    The State noted that at the sentencing hearing, the defendant's plea counsel argued for a lesser sentence and that the PSI report included letters supporting the defendant. However, the State presented evidence and testimony regarding several serious aggravating factors, most notably, the statements from the victim regarding the emotional distress and trauma that she had experienced as a result of the defendant's conduct. The State argued that the 30-year sentence was completely appropriate considering the effect on the victim.

¶ 16    The State also argued that although the defendant's plea counsel was effective, acted with due diligence, and appropriately advised the defendant, the evidence against the defendant was overwhelming. The State argued that had the defendant not accepted the open plea and instead went to trial, he would have faced a minimum sentence of 24 years in prison. However, the State argued that the likelihood that the defendant would have received the minimum sentence after a conviction at trial was minimal.

¶ 17    On June 20, 2018, the defendant's postplea counsel filed an amended postconviction petition, which reiterated the allegations made in the first postconviction petition but also included allegations that the defendant's speedy trial rights were violated. The defendant's counsel also filed a renewed and amended motion to withdraw guilty plea, which made the same allegations as set forth in the previous motion to withdraw. During the August 30, 2018, hearing on the defendant's amended motions, the defendant's postplea counsel and the State presented their arguments, and then the defendant asked the trial court whether the hearing was on both the motion to withdraw his guilty plea and the postconviction petition. The trial court responded that both an amended postconviction petition pursuant to the Act and an amended motion to withdraw guilty plea had been filed and therefore both motions would be considered. Following the hearing, on September 6, 2018, the trial court entered a written order denying both motions.

¶ 18    Thereafter, on September 24, 2018, the defendant filed a notice of appeal. However, on June 16, 2020, the defendant's appointed appellate counsel filed a motion to voluntarily dismiss the appeal. In the motion, appellate counsel indicated that although counsel had discussed with the defendant the consequences of dismissing the appeal, specifically the fact that the defendant would forfeit any challenge to the trial court's judgment by means of the appeal, the defendant had decided to dismiss his appeal. Attached to the motion was a signed authorization from the

defendant, in which the defendant indicated that he was informed of the consequences of dismissing his appeal, including the fact that a dismissal would result in a forfeiture of his right to challenge the trial court's judgment by means of the appeal, but he wished to dismiss the appeal anyway. On June 18, 2020, this court entered an order granting the defendant's motion and dismissing the appeal.

¶ 19 On November 10, 2021, the defendant filed a *pro se* motion for leave to file a successive postconviction petition, in which he addressed the cause and prejudice requirements for obtaining leave to file a successive postconviction petition. The defendant alleged that there was cause for his failure to raise the issues brought in his successive postconviction petition because his postplea counsel's representation was inadequate. The defendant alleged that his postplea counsel failed to meet with him to discuss any potential claims and did not discuss the postconviction petitions that were filed on the defendant's behalf. The defendant asserted that, instead, postplea counsel merely "regurgitated" the defendant's *pro se* claims brought in the defendant's motion to withdraw his guilty plea and "re-packaged those claims" in a postconviction petition. The defendant argued that postplea counsel did not "flesh out" the defendant's claims because postplea counsel failed to mention that the defendant's initial counsel failed to meet with the defendant or respond to the defendant's letters. The defendant also asserted that postplea counsel failed to mention that plea counsel sent the defendant an offer letter, failed to obtain the offer letter from plea counsel, and failed to obtain the defendant's files from plea counsel. Thus, the defendant argued that although postplea counsel did file a postconviction petition, counsel did not provide reasonable representation, so the "opportunity to present claims was squandered."

¶ 20 The defendant also contended that he was prejudiced because "the claim so infected [his] judgment of conviction it violated [his] Due Process, in that [his postplea] counsel's unreasonable

representation deprived [him] of proper proceedings for the initial petition and that [postplea counsel's] unreasonable assistance may deprive [him of] a full hearing on [his] claims." In addition, the defendant noted that his postplea counsel scheduled a video appearance for the postconviction hearing, and the defendant only agreed to appear by video because he believed it would only be another continuance. However, the defendant noted that the hearing was instead on the " 'hybrid' motion." The defendant indicated that he was unable to hear the entire proceeding due to the video's poor audio quality and that he was unable to consult with counsel in private due to the proceeding being in video.

¶ 21     On March 4, 2022, the trial court entered an order appointing the defendant counsel on his *pro se* successive postconviction petition. On November 21, 2022, the trial court entered another order, in which the trial court indicated that the defendant's *pro se* petition had progressed to the second stage of the postconviction proceedings and instructed the circuit clerk to file stamp the defendant's *pro se* petition. That same day, the defendant's *pro se* successive postconviction petition was filed. In the successive petition, the defendant argued that his initial counsel was ineffective for (1) failing to meet or correspond with him during the 120-day speedy trial period, (2) failing to file a motion to suppress his confession, and (3) failing to invoke his speedy trial rights. The defendant also argued that his plea counsel was ineffective for (1) failing to invoke the defendant's speedy trial rights and file a motion to dismiss the charges against the defendant based on his speedy trial rights being violated; (2) failing to file a motion to suppress the defendant's confession and some of the victim's statements; (3) advising the defendant that the defendant would receive a sentence of 8 to 12 years if the defendant entered into an open guilty plea; (4) failing to argue, at the guilty plea hearing, that the defendant should be sentenced to a 10-year sentence and instead arguing that the defendant should not be sentenced to the maximum sentence;

10

and (5) failing to file a motion to withdraw the defendant's guilty plea, which left the defendant to file *pro se* a written letter as his motion to withdraw his guilty plea.

¶ 22 The defendant further contended that his postplea counsel was ineffective because counsel improperly recharacterized the defendant's motion to withdraw guilty plea as an amended postconviction petition. The defendant alleged that he was denied due process and equal protection of the law by the trial court's failure to admonish him as to the legal complexities of postplea counsel's decision to recharacterize his motion to withdraw as a postconviction petition. The defendant also alleged that there was an unjustifiable 30-month delay in adjudicating his postplea motions.

¶ 23 Attached to the defendant's successive *pro se* postconviction petition was a *pro se* memorandum of law. In the memorandum, the defendant contended, in pertinent parts, that the second postconviction petition was his first opportunity to raise his claims in a postconviction petition, as his initial postconviction petition was filed to reinstate his right to a direct appeal that was lost due to postplea counsel's ineffectiveness. The defendant contended that the trial court failed to, before recharacterizing his motion to withdraw his guilty plea as a postconviction petition, (1) notify the defendant that the trial court intended to allow the recharacterization; (2) warn the defendant that the recharacterization would make any subsequently filed postconviction petitions subject to the restrictions on successive postconviction petitions; and (3) provide the defendant with an opportunity to either withdraw or amend the pleading. Thus, he argued that his second postconviction petition should not be considered a successive postconviction petition under the Act and thus should not be subject to the restrictions on successive petitions.

11

¶ 24    Alternatively, the defendant contended that he satisfied the cause and prejudice standard for advancing his claims to the second stage. He argued that he had established cause because the trial court had failed to properly admonish him concerning the procedural disadvantages of the recharacterization of his motion to withdraw guilty plea as a postconviction petition. He also argued that he established prejudice "by and through the multiple [c]onstitutional violations" set forth in his *pro se* filings. The defendant also attached a *pro se* supplemental postconviction petition, in which he challenged the constitutionality of the statute permitting an indeterminate three year to life MSR term for certain sex offenses. Further, the defendant attached two affidavits from individuals who were in custody with the defendant at the time of the plea proceedings. The individuals stated that during the plea proceedings, the defendant had received a letter from his counsel indicating that the State had made an offer of 18 years in prison. However, counsel indicated that he could instead get the defendant a deal that was closer to 12 years.

¶ 25    On January 17, 2024, the case was reassigned to a different judge. However, on January 18, 2024, both parties appeared before the previous judge and that judge entered an order permitting the defendant's postconviction counsel additional time to "review/file, [and] make amendments" to the postconviction petition. Subsequently, on February 2, 2024, the new judge *sua sponte* entered an order denying the defendant leave to file a successive postconviction petition. In the order, the trial court made the following observations. The trial court noted that the defendant's postplea counsel filed an amended postconviction petition even though no previous postconviction petition had been filed under the Act, and in that petition, counsel raised the defendant's *pro se* claims of ineffective assistance of plea counsel and challenged the defendant's sentence as excessive. The trial court then noted that the defendant's postplea counsel again filed combined motions, reiterating the original claims and adding a violation of speedy trial claim.

12

After the trial court denied the combined motions, the defendant filed a timely notice of appeal. However, the defendant eventually voluntarily dismissed that appeal.

¶ 26    Thereafter, the defendant filed a *pro se* motion for leave to file a successive postconviction petition, which addressed cause and prejudice. The trial court noted that the previous judge, without granting the motion for leave to file, appointed counsel to represent the defendant in the postconviction proceedings. After appointing counsel, that judge entered an order indicating that the matter had advanced to the second stage of the postconviction proceedings and instructing the circuit clerk to file stamp the petition.

¶ 27    The trial court indicated that it would be "remiss not to mention the clear procedural flaws" that occurred in the case. The trial court noted that without granting the defendant leave to file a successive postconviction petition, the previous judge had entered an order appointing counsel for the defendant. The trial court noted that the record demonstrated that the previous judge made no findings as to the defendant's assertions of cause and prejudice. The trial court found that despite the defendant's failure to obtain leave of court to file a successive postconviction petition, the previous judge had entered an order in which the judge wrongly concluded that the matter had proceeded to the second stage of the postconviction proceedings. Moreover, the trial court noted that the circuit clerk, understanding that the postconviction petition should not be file stamped without leave of court, did not file stamp the petition for more than one year after its submission and then only file stamped the petition after the previous judge specifically, and wrongly, directed the clerk to file stamp it.

¶ 28    The trial court found that the defendant did not assert any new claims of constitutional deprivations arising from the previous proceedings in which the defendant had entered into an open guilty plea. Instead, the defendant maintained that he had been deprived of a statutory right,

13

specifically, the right to reasonable assistance of postconviction counsel, during the proceedings on his first postconviction petition. Thus, the trial court found that the claims raised against the defendant's postplea counsel were "outside the purview of the Act." The trial court noted that the supreme court had ruled that the postconviction process did not provide a forum by which a defendant may challenge the conduct of counsel at an earlier postconviction proceeding. See *People v. Szabo*, 186 Ill. 2d 19, 26 (1998).

¶ 29    In addition, the trial court noted that the defendant's postplea counsel had filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), and thus counsel was presumed to have provided reasonable assistance. The trial court found that the proper forum for the defendant's claims was his appeal from his denial of his first postconviction petition, which he had voluntarily dismissed. Thus, the trial court found that the defendant had failed to identify any objective factor that had impeded his ability to raise a specific claim in his initial postconviction petition. Accordingly, the trial court concluded that the defendant failed to make a *prima facie* showing of cause.

¶ 30    However, even assuming that the defendant had established cause, the trial court found that the defendant had failed to establish prejudice. The trial court noted that, in the defendant's *pro se* filings, the defendant mainly asserted that postplea counsel's representation prevented a full hearing on the defendant's postconviction claims and that the defendant was unable to hear the entirety of the hearing on the initial postconviction petition because it was held via video. Although the defendant admitted to agreeing to the video proceedings, he alleged that he mistakenly believed that the proceedings would result in another continuance. Thus, the trial court noted that the defendant only focused on his postplea counsel's purported deficient assistance. As such, the trial

14

court found that the defendant failed to show prejudice when he could have raised these issues, but did not, during the initial postconviction proceedings or in the subsequent appeal.

¶ 31    The trial court then noted that the defendant did not address cause and prejudice as to all his claims raised in his successive petition and thus failed to satisfy the cause and prejudice test as to those claims. However, the trial court indicated that it had also reviewed those claims and found that the defendant could not have satisfied the cause and prejudice test as to those claims. The trial court noted that the defendant unsuccessfully raised his speedy trial violation claim in 2018, which was denied by the trial court on September 6, 2018, and then attempted to raise it again in his successive postconviction petition. The trial court thus found that the claim was not only barred by the doctrine of *res judicata* but, under the circumstances, was forfeited by the defendant's earlier guilty plea and by his voluntary dismissal of his appeal. Moreover, the trial court found that the defendant could not show cause by identifying an objective factor that impeded his ability to raise this specific claim in his initial postconviction petition when the claim had previously been raised. The trial court concluded that given that the claim had previously been raised and denied, the defendant could not show a due process violation.

¶ 32    The trial court then noted that the defendant also raised claims of ineffective assistance of counsel against his initial counsel and plea counsel. However, the trial court found that those claims were either raised in the previous proceeding or could have been raised there. In addition, the trial court found that some of the purported deficient acts, such as plea counsel's failure to file a motion to suppress, were forfeited when the defendant entered his guilty plea. Accordingly, the trial court found that the defendant failed to satisfy the cause and prejudice test as to any of the claims raised in his successive petition. Based on the reasons set out above, the trial court denied

15

the defendant's motion for leave to file a successive postconviction petition. The defendant appeals.

¶ 33                                II. ANALYSIS

¶ 34    The defendant first contends that his postplea counsel was ineffective for filing a postconviction petition concurrently with a motion to withdraw the defendant's guilty plea because there was no procedural or substantive benefit to seeking postconviction relief at that time. The defendant argues that all of the claims raised in the initial postconviction petition could have been, and should have been, raised in the motion to withdraw guilty plea. Thus, the defendant argues that the initial postconviction filing was not only entirely superfluous but prejudicial to him because it exhausted his singular opportunity to have a complete review of his postconviction allegations and made any future postconviction claims subject to the cause and prejudice requirement. Consequently, the defendant argues that his current postconviction petition should be treated as an initial postconviction petition that is not subject to the cause and prejudice restriction.

¶ 35    In response, the State contends that the defendant should be estopped from arguing that the trial court erred in reviewing his current *pro se* postconviction petition for cause and prejudice because, in his *pro se* filings, he explicitly asked for leave to file a successive postconviction petition. In addition, the State contends that the defendant has forfeited his ineffective assistance of counsel claims against postplea counsel where (1) he never argued before the trial court that his *pro se* successive postconviction petition should have been treated as an initial postconviction petition; (2) he entered into a guilty plea after being properly admonished as to the consequences of pleading guilty; and (3) he voluntarily dismissed his direct appeal, even after being advised that dismissing the appeal would impact his ability to make certain arguments by means of the appeal.

16

¶ 36    The Act provides a mechanism by which a criminal defendant may assert that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 (West 2020); *People v. Little*, 2012 IL App (5th) 100547, ¶ 12. A petition for postconviction relief is not an appeal of the underlying judgment. *People v. Myers*, 386 Ill. App. 3d 860, 864 (2008). Rather, it is a collateral proceeding that permits an inquiry only into constitutional issues that were not, and could not have been, raised on direct appeal. *Id.* Accordingly, any issue considered by the court on direct appeal is barred by the doctrine of *res judicata*, and any issue that could have been raised on direct appeal, but was not raised, is forfeited. *Id.*

¶ 37    The Act contemplates the filing of only one postconviction petition. *People v. Pitsonbarger*, 205 Ill. 2d 444, 456 (2002). Successive postconviction petitions are disfavored under the Act. *Little*, 2012 IL App (5th) 100547, ¶ 14. "Consequently, a defendant faces immense procedural default hurdles when bringing a successive postconviction petition." *People v. Davis*, 2014 IL 115595, ¶ 14. Since a successive postconviction petition impedes the finality of criminal litigation, the procedural hurdles are "lowered only in very limited circumstances." *Id.*

¶ 38    However, our supreme court has held that the statutory bar to a successive postconviction petition will be relaxed "when fundamental fairness so requires." (Internal quotation marks omitted.) *People v. Ortiz*, 235 Ill. 2d 319, 329 (2009). To determine whether the procedural hurdle to filing a successive postconviction petition should be lowered as required by fundamental fairness, a court reviews the claims in the petition under the cause and prejudice test. *People v. Smith*, 341 Ill. App. 3d 530, 535 (2003). The cause and prejudice test was codified in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2020)), which states as follows:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure

17

to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

Thus, under the cause and prejudice test, the defendant must show good cause for failing to raise the claimed error in a prior proceeding and actual prejudice resulting from the error. *People v. Morgan*, 212 Ill. 2d 148, 153 (2004).

¶ 39    To obtain leave to file a successive postconviction petition, the defendant must establish both prongs of the cause and prejudice test. *People v. Moore*, 2020 IL App (4th) 190528, ¶ 14. "[T]he cause-and-prejudice test presents a higher burden than the frivolous or patently without merit standard applied at first-stage proceedings." *Id.* ¶ 15. When the trial court has not held an evidentiary hearing, we review *de novo* the denial of a defendant's motion for leave to file a successive postconviction petition. *Id.*

¶ 40    Here, the defendant contends that his successive postconviction petition should not be subject to the cause and prejudice test because his postplea counsel was ineffective for filing an unnecessary initial postconviction petition during the postplea proceedings. We agree with the defendant that the filing of the initial postconviction petition concurrently with the motion to withdraw guilty plea was unnecessary, as the allegations raised in that postconviction petition were either already raised in the motion to withdraw or could have been raised in that motion. See *People v. Wilk*, 124 Ill. 2d 93, 104 (1988) (the purpose of Illinois Supreme Court Rule 604(d) is to ensure that, before a criminal appeal is filed, the trial court immediately addresses any improper conduct

18

or errors that may have produced a guilty plea). However, we agree with the State that the defendant's challenge to postplea counsel's performance is either forfeited or barred by the doctrine of *res judicata* because the defendant failed to pursue his appeal following the denial of the initial postconviction petition. Since the concurrent filing of the motion to withdraw his guilty plea and the initial postconviction petition occurred before the initial appeal, any claim regarding postplea counsel's effectiveness would be based on the original record in the prior appeal and thus could have been raised in that appeal. Therefore, the defendant cannot now argue that his postplea counsel's ineffectiveness revives claims that he could have asserted in his first appeal, including his claim that postplea counsel was ineffective for filing an unnecessary postconviction petition. See *People v. Blair*, 215 Ill. 2d 427, 445 (2005) ("an otherwise meritorious claim has no basis in law if *res judicata* or forfeiture bar the claim").

¶ 41    The defendant argues that he could not have made this argument on direct appeal because it was not ripe until he filed his second postconviction petition and was subject to the cause and prejudice test. The defendant contends that he could not have asked this court, in the prior appeal, to view a potential future postconviction filing as an initial filing, as that would have been a request to issue an improper advisory order. However, in this particular case, postplea counsel filed a postconviction petition concurrently with the motion to withdraw, and the trial court subsequently denied both motions. At that point, the defendant could have challenged, in his previous appeal, the trial court's order denying his initial postconviction petition, and in doing so, could have argued that his postplea counsel was ineffective for filing the postconviction petition during the postplea proceedings. If the defendant had challenged the trial court's order denying his postconviction relief, this court could have, if it agreed with the defendant's contentions, vacated that order or even potentially allowed his counsel to amend the postplea filings, so that all of the defendant's

19

allegations relating to the entry of his guilty plea would be raised in an amended motion to withdraw guilty plea. However, the defendant did not seek that relief, as he voluntarily dismissed his appeal.

¶ 42   Moreover, we note that before the defendant's appellate counsel filed a motion requesting that the first appeal be dismissed, appellate counsel admonished the defendant as to the consequences of the dismissal, which included the fact that he would forfeit any challenge to the trial court's judgment by means of the appeal. Thus, based on the above, we find that the defendant's challenge to postplea counsel's performance is either forfeited or barred by the doctrine of *res judicata* because the defendant failed to pursue his appeal following the denial of the initial postconviction petition. Accordingly, we will not consider the defendant's successive postconviction petition as an initial postconviction petition. Therefore, the defendant was required to satisfy the cause and prejudice test when filing his successive postconviction petition.

¶ 43   The defendant next contends, in the alternative, that the trial court's *sua sponte* dismissal of his successive postconviction petition violated his due process rights. Specifically, the defendant argues that the trial court failed to give the parties notice and an opportunity to present arguments on cause and prejudice before dismissing the defendant's petition for not satisfying the cause and prejudice test. In making this argument, the defendant notes that before the dismissal, his *pro se* successive postconviction petition had advanced to the second stage of the postconviction proceedings, and his appointed counsel had been given time to amend the *pro se* successive petition. Thus, the defendant argues that he should have at least been provided with an opportunity to present argument as to cause and prejudice before his *pro se* petition was dismissed. However, the defendant does not seem to argue, in his appellate briefs, that he has actually satisfied the cause and prejudice test.

20

¶ 44    Section 122-1(f) of the Act provides that a defendant must obtain leave of court to file a successive postconviction petition, which may only be granted if the defendant demonstrates cause for his failure to bring the claim in his initial postconviction petition and prejudice results from that failure. 725 ILCS 5/122-1(f) (West 2020); *People v. Ford*, 2022 IL App (1st) 211538, ¶ 4. "This is a preliminary screening to determine whether defendant's *pro se* motion for leave to file a successive postconviction petition adequately alleges facts demonstrating cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24. The circuit court must make a determination as to whether each individual claim contained within the petition meets the cause and prejudice test. *People v. Thames*, 2021 IL App (1st) 180071, ¶ 84. Without that express determination, the successive postconviction petition cannot be deemed " 'filed' " under the Act and thus the successive petition cannot advance to the second stage of the postconviction proceedings. *Id.* ¶ 85.

¶ 45    Moreover, the cause and prejudice determination is a question of law that must be decided on the pleadings and supporting documentation, and there is no provision in the statute requiring an evidentiary hearing on the issue of cause and prejudice. *Bailey*, 2017 IL 121450, ¶ 24. However, even if the successive petition is advanced to the second stage, the lack of cause and prejudice can support a second-stage dismissal, as the cause and prejudice test remains applicable at all three stages of the successive postconviction proceedings. *Id.* ¶ 26; *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 35.

¶ 46    Here, the defendant filed a *pro se* motion seeking leave to file a successive postconviction petition. Thereafter, the trial court appointed counsel for the defendant, indicated that the defendant's successive postconviction petition had advanced to the second stage, and instructed the circuit clerk to file stamp the defendant's *pro se* successive postconviction petition. In advancing the successive postconviction to the second stage, the trial court did not make an explicit

21

finding on cause and prejudice. Thus, even though the trial court had entered an order indicating that the defendant's *pro se* successive petition had advanced to the second stage, there was nothing preventing the trial court from reconsidering that initial order on the basis that no explicit determination on cause and prejudice had been made. See *Thames*, 2021 IL App (1st) 180071, ¶ 87. In fact, a cause and prejudice finding was required before the successive postconviction petition could be deemed "filed" and before the matter could proceed to second-stage proceedings. In addition, even assuming that the trial court implicitly ruled on cause and prejudice when it advanced the defendant's *pro se* successive petition to the second stage of the postconviction proceedings, again, the trial court could reconsider that decision before allowing the successive postconviction petition to proceed any further. See *id.* (a circuit court had jurisdiction to reconsider previously entered rulings as long as the case was pending before it).

¶ 47    Further, the trial court did not err in making this determination, *sua sponte*, without any input from the parties, as there is no provision in the Act requiring the trial court to provide notice and an opportunity for a hearing before making the requisite cause and prejudice determination. At the time that the trial court denied the defendant's motion for leave to file the successive postconviction petition, the defendant's counsel had not yet filed an amendment to the *pro se* petition, and the State had not filed a motion to dismiss. Moreover, we note that the defendant's *pro se* motion for leave to file his successive postconviction petition argued cause and prejudice. Therefore, the trial court was able to consider the defendant's arguments in making its decision on cause and prejudice. Accordingly, we find that the trial court did not err in dismissing the defendant's *pro se* successive postconviction petition without giving the defendant notice that it was going to make a cause and prejudice determination. As the defendant has not challenged the

22

trial court's ultimate finding that he has failed to establish cause and prejudice, we will not address that issue in this decision.

¶ 48                                    III. CONCLUSION

¶ 49    For the reasons stated above, we affirm the judgment of the circuit court of Madison County.


¶ 50    Affirmed.